Eastern Dis.
August, 1832.

MONDAY
vs.
WILSON ET AL.

---

### MONDAY vs. WILSON ET AL.

APPEAL FROM THE COURT OF THE EIGHTH DISTRICT.

Where the vendor of property keeps possession, it constitutes an *indicium* or badge of fraud in relation to third persons; but whether property thus situated can be legally seized by the creditors of the vendor without compelling them to resort to an action of nullity—*Quere?*

Where slaves are apparently the property of a vendee, both by actual possession and authentic act of sale, they cannot be seized by the creditors of the vendor, without causing the sale to be annulled by an action instituted for that purpose.

The act of 1810, which provides that "notarial acts concerning immovable property shall be recorded in the parish where such immovable is situated," is not applicable to slaves.

A sheriff is not the warrantor of property which he sells under execution.

The facts are stated in the opinion of the court, delivered by MATHEWS, J.

In this case the plaintiff claims two slaves (described in his petition) which are in the possession of the defendant. The former sets up a title derived from Morgan Morgan evidenced by an authentic act passed before the parish judge of East Feliciana. The defendant claims the same property in virtue of a sheriff's sale made by the sheriff of St. Helena, in which it was sold as belonging to the vendor of the plaintiff.

The cause was submitted to a jury in the court below, who found a verdict for the defendant, and judgement being thereon rendered, the plaintiff appealed.

The evidence of the case shows that the slaves in question were on a plantation situated in the parish of St. Helena, belonging to Morgan, under whom both parties to this suit claim title, one by a voluntary sale, and the other by a forced sale made under execution by the sheriff of the parish aforesaid. The sale to the plaintiff was made on the 18th of October, 1830; the sheriff's sale took place in January, 1831, and was made under an execution which issued on a judgement confessed by Morgan in favor of the defendant Wilson. The validity of this sale is contested, on the ground of irregularities in the proceedings of the sheriff, he not having pursued the formalities required by law necessary to give effect to forced alienations of property under our judicial proceedings. Whether the regularity of the course pursued by the sheriff in the sale by him made could, under any circumstances, be inquired into in the collateral manner in which it is here presented, need not be examined in the present case, as the court is of opinion that the plaintiff in the execution did not adopt the means accorded to him by law to render the property now in dispute liable to be seized and sold under his execution.

The sale from Morgan to the plaintiff is by authentic act made in due form, a fair price stipulated for the slaves sold, a mortgage reserved on them to secure payment, and the deed contains a declaration that they have been delivered to the buyer. In addition to this clause of delivery, the record shows that the purchaser had possession of them as agent or

manager of the plantation of the seller, and, as stated by the witness Williams, had the management of these identical slaves in the fall of 1830.

On the subject of tradition or delivery of slaves, it is stated in the article 2484 of the Louisiana Code, that it takes place in three ways, "either by real delivery made to the buyer, or by the mere consent of the parties when the sale mentions that the thing sold has been delivered, or when the buyer was in possession under another title." But the article 2456 provides that "in all cases where the thing sold remains in the possession of the seller because he has reserved the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated," &c. Now it appears to us that when the seller remains in actual possession without a reservation of usufruct or retention of the property sold under color of any precarious title, the same or perhaps a stronger reason exists to induce a belief that the sale was simulated and fraudulent. Indeed, it is believed to be a principle recognised in all systems of jurisprudence, that where the seller of property keeps possession, this circumstance constitutes an *indicium* or badge of fraud in relation to third persons; and perhaps *property thus situated might be legally seized by creditors of the vendor without compelling them* to resort to actions of nullity to set aside such contracts, and that the mere mention of delivery in the act of sale ought not to defeat the right which creditors have to seize property as belonging to a vendor before tradition. In the present instance, the purchaser is shown to have been in possession of the property sold, under another title than that acquired by the sale, viz. as agent for the seller. Thus situated, the slaves, which were apparently the property of the plaintiff both by sale evidenced by a notarial act and by actual possession, could not legally be seized as belonging to the defendant in execution by the judgement creditor, without causing the sale to the plaintiff to be annulled by an action directly instituted for that purpose.

*Where the vendor of property keeps possession, it constitutes an indicium or badge of fraud in relation to third persons; but whether property thus situated can be legally seized by the creditors of the vendor without compelling them to resort to an action of nullity—Quere?*

*Where slaves are apparently the property of a vendee, both by actual possession and authentic act of sale, they cannot be seized by the creditors of the vendor, without causing the sale to be annulled by an action instituted for that purpose.*

This doctrine has been established by various decisions of the Supreme Court, which we believe to have been made in conformity with well known principles of our jurisprudence. See *the Louisiana Code, articles* 1965–81, and the cases as reported in 9 *Martin*, 648, 6 *N. S.* 324, and 2 *Lou. Reports*, 209. It cannot be denied that the title of the plaintiff is not free from suspicions of fraud. The circumstances of the parties to the contract going out of the parish where they resided to make the sale, and not causing the act to be recorded in the place of their domicile, and where the property was at the time of sale, &c. are opposed to a belief of fairness in the transaction.

EASTERN DIS.
*August*, 1832.

MONDAY
*vs.*
WILSON ET AL.

The want of recording the deed in the parish where the slaves were, is relied on by the counsel for the appellant as a circumstance to destroy its effect against him, as being a third person, &c. In support of this objection to the validity of the plaintiff's title, reference is made to the act of 1810. By the seventh section of that act it is provided that "no notarial act concerning immovable property shall have any effect against third persons until the same shall have been recorded in the office of the judge of the parish where such immovable property is situated. Although slaves by our laws are placed in some respects on the footing of immovable property, yet being in their nature moveable, considered as things, and being *semorentes* considered as men, they cannot (strictly speaking) be held to be immovables situated in any particular parish of the state. It is, therefore, believed, that the act cited is not applicable to property of this kind.

*The act of 1810 which provides that "notarial acts concerning immovable property shall be recorded in the parish where such immovable is situated," is not applicable to slaves.*

We are utterly at a loss to conceive on what principle the sheriff is called in warranty in the present suit. He did not pretend to sell any thing except the right, title, and interest of Morgan in the slaves. They were seized on the showing and as pointed out by the plaintiff in execution to be the property of the defendant in that writ. A sheriff may be made responsible for neglect or malfeasance in the exercise of his official duties, but we believe that this officer is never

*A sheriff is not the warrantor of property which he sells under execution.*

understood to be a general warrantor of the title to all the property which he may be obliged to sell under execution.

In pursuance of the reasoning of this opinion, the judgement of the District Court must be reversed, and judgement be here rendered in favor of the plaintiff. The creditor (in this event) who caused the property to be seized and sold under execution, will then be entitled to redress on his claim in warranty against the defendant in execution, to the amount of his original debt, such interest thereon as may be legally claimed, and costs, &c. This results from the provisions of the Code of Practice, articles 712—4. From the course the cause took in the court below, a decision on the claim in warranty was not necessary, and consequently none was made. The cause must, therefore, be remanded to that court for trial between the defendant and Morgan, who was cited in warranty.

It is, therefore, ordered, adjudged, and decreed, that the verdict of the jury be set aside, and the judgement of the District Court avoided, reversed, and annulled: And it is further ordered, adjudged, and decreed, that the plaintiff and appellant do recover from the defendant and appellee, the slaves as claimed in the petition. It is further ordered, adjudged, and decreed, that this cause be sent back to the District Court to be tried as between the defendant and the warrantor Morgan. The appellee to pay the costs of appeal and all such as have accrued in the court below in relation to the dispute between the plaintiff and the defendant Wilson.